**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Lisa Weiler,

          Plaintiff,                                  Case No.  1:17cv673

        v.                                         Judge Michael R. Barrett

Cecil Allf., *et al.*,

          Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendant Bryan E. Allf's Motion to Dismiss (Doc. 29); Defendant Cecil E. Allf's Partial Motion to Dismiss Complaint and Motion to Dismiss Cross-claims (Doc. 31); and Defendant Key Caribe, LLC's Motion to Dismiss (Doc. 32).  These motions have been fully briefed.  (Docs. 37, 38, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52).

## I.  BACKGROUND

This case stems from a dispute over the ownership of a shopping mall in Key West, Florida.  The ownership interest was transferred from the Knabe Family Limited Partnership, which is not a party to this case.  Plaintiff Lisa A. Weiler is the Co-Executor of Edna Alice Knabe's estate, Co-Trustee of the Edna Alice Knabe Trust, and Co-Trustee of the Robert H. Knabe Trust.  Lisa Weiler had been in a ten-year relationship with Edna's son, Scott Knabe, who is also deceased.  Plaintiff claims Defendant Cecil Allf, in concert with Bryan E. Allf, divested Edna Alice Knabe's estate, the Edna Alice Knabe Trust, and the Robert H. Knabe Trust of their entire ownership interest in Key Caribe through fraud, misrepresentation, coercion, deception breach of fiduciary duty,

self-dealing or intimidation.

The original civil action was brought on September 7, 2017, in the Hamilton County, Ohio Court of Common Pleas, Probate Division. Pursuant to Sections 1441 and 1446 of Title 28 of the United States Code, Cecil Allf removed the action to this Court.

The following facts are alleged in the Complaint. (Doc. 3).

In December of 1986, Robert H. Knabe (Alice Knabe's deceased husband) and Cecil Allf jointly purchased the shopping mall, which is situated on a parcel of commercial property located at 425-431 Front Street in Key West, Florida ("Key Caribe property"). (Doc. 3). Immediately following this transaction, both Robert H. Knabe and Cecil Allf each owned a fifty percent (50%) interest in the Key Caribe property. After acquisition of the Key Caribe property, Cecil Allf transferred all of his interest in the property to the Cecil Allf Trust.

At some point after the acquisition of the Key Caribe property, Robert H. Knabe transferred some or all of his interest in the property to a legal entity known as the Knabe Family Limited Partnership, a Georgia limited partnership registered as a foreign partnership in the State of Florida where the Key Caribe property is located. At the time of its creation, the Knabe Family Limited Partnership had two general partners and two limited partners, both of whom were Robert H. Knabe and Alice Knabe. Robert H. Knabe and Alice Knabe began a series of transactions of gifting general partnership shares and limited partnership shares to their two sons, Scott A. Knabe and R. Craig Knabe.

Robert H. Knabe died October 5, 2000. Robert H. Knabe was a resident of the

State of Florida along with his wife, Alice Knabe, and his son, R. Craig Knabe. At the time of Robert H. Knabe's death, all or substantially all of his ownership interest in the Knabe Family Limited Partnership had been transferred to the Robert H. Knabe Trust.

Upon the passing of Robert H. Knabe, the Robert H. Knabe Trust allocated the Trust's interest in the Knabe Family Limited Partnership between a "Fund A Trust" and a "Fund B Trust." The Fund A Trust provided lifetime income to Alice Knabe as his surviving spouse, and such portions of the principal of the Fund A Trust as she may request during her lifetime. After such allocation upon the death of Robert H. Knabe, the Fund A Trust held Sixteen and Nine Hundredths percent (16.09%) of the Knabe Family Limited Partnership.

Also upon the passing of Robert H. Knabe, the Robert H. Knabe Trust allocated Twenty-Five and Thirteen Hundredths percent (25.13%) of the Knabe Family Limited Partnership to the Fund B Trust of the Robert H. Knabe Trust. The Fund B Trust provided lifetime income to Alice Knabe, and such portion of the principal of the Fund B Trust, as determined in the discretion of the Trustee, to be necessary to provide for the financial requirements of Alice Knabe.

Under the terms of the Robert H. Knabe Trust, upon the death of Alice Knabe, any assets remaining in the Fund A Trust were to be rolled over and distributed as a part of the Fund B Trust. The listed beneficiaries of Fund B Trust within the Robert H. Knabe Trust Agreement upon the death of Alice Knabe were her sons, Scott A. Knabe and R. Craig Knabe. Further, the Trust Agreement provided that if Scott A. Knabe and R. Craig Knabe were both deceased, the beneficiaries of Fund B Trust at the time of Alice Knabe's death would be those persons then living who would be entitled to receive

distribution of Robert H. Knabe's estate had Robert H. Knabe died intestate.

On August 26, 2003, Scott A. Knabe, a resident of the State of Ohio, died intestate, and his entire estate, including his general partnership shares and limited partnership shares in the Knabe Family Limited Partnership, were transferred to his mother, Alice Knabe. The Estate of Scott A. Knabe was administered in probate through the Hamilton County, Ohio Probate Court, Case Number 2003004719. At the request of Alice Knabe, Lisa Weiler served as the Administrator of the Scott A. Knabe estate. Lisa Weiler had been in a committed relationship with Scott A. Knabe for more than ten years prior to his death.

During the summer of 2015, while still residing in New Smyrna Beach, Florida, Alice Knabe suffered a stroke which required her hospitalization. A short time thereafter, on August 31, 2015, while Alice Knabe was still recovering from her stroke, R. Craig Knabe passed away.

With the passing of both Scott A. Knabe and R. Craig Knabe, the vested Robert Knabe Trust Fund B beneficiaries became Robert H. Knabe's statutory next-of-kin: the children of Robert H. Knabe's deceased brothers Richard and Russell Knabe.

On or about September 9, 2015, Cecil Allf convinced Alice Knabe to sign a Power of Attorney appointing himself and his daughter, Cynthia Allf, as Attorneys in Fact for Alice Knabe. In early September, 2015, after her release from the hospital in Florida following her stroke, Alice Knabe decided to return to Cincinnati, Ohio. Alice Knabe then became a resident of Maple Knoll Retirement Community.

On September 22, 2015, Alice Knabe met alone with attorney Terrence Donnellon at Maple Knoll Village for approximately ninety minutes to discuss matters

concerning her estate plan. Following the meeting, Alice Knabe executed an Agreement of Representation with Donnellon authorizing him to act as her Attorney at Law with respect to her estate plan.

On September 23, 2015, Alice Knabe met again with Donnellon and executed a substitute Power of Attorney authorizing Lisa Weiler to act as her attorney in fact. The Power of Attorney executed in favor of Lisa Weiler on September 23, 2015 revoked all prior powers of attorney, including the earlier power of attorney which had authorized Cecil Allf and his daughter Cynthia Allf to act as Attorneys-in-Fact for Alice Knabe.

At the September 23, 2015 meeting to discuss and update her Power of Attorney, Donnellon and Alice Knabe, meeting alone, discussed her updated estate plan. At the meeting Alice Knabe, identified several individual beneficiaries and various non-profit organizations which were important in her life and which she wanted to honor. Alice Knabe then updated her plan on September 30, 2015.

On October 7, 2015, Cecil Allf and his lawyer met with Alice Knabe and Donnellon. During this meeting, Cecil Allf demanded that he be reappointed Attorney-in-Fact for Alice Knabe and demanded that Alice Knabe execute an operating agreement for Key Caribe which Cecil Allf's attorney had prepared. The operating agreement was intended to hold the Key Caribe property in a limited liability corporation with the Cecil Allf Trust and the Knabe Family Limited Partnership as equal members.

Attorney Fred Keith and Cecil Allf requested to meet privately in the hallway with Donnellon. The two attorneys and Cecil Allf left the room. When Donnellon re-entered the room, he observed Cecil Allf demanding that Alice Knabe make a decision.

Cecil Allf's attorney, Fred Keith, prepared another Power of Attorney which Cecil

Allf presented to Alice Knabe on October 9, 2015 without any prior notice to or knowledge of Donnellon. Alice Knabe signed another Power of Attorney re-appointing Cecil Allf to act as her Attorney in Fact.

About this same time, Donnellon began negotiating the operating agreement for the Key Caribe property with attorney Fred Keith. Donnellon wanted the operating agreement to reflect not only the management of the Key Caribe property, but he suggested to Cecil Allf's attorney, who agreed, that language should be added detailing how the Cecil Allf Trust would purchase the Knabe family interest in the Key Caribe property in the event of Alice Knabe's death so a forced liquidation of the Key Caribe property would not be required.

The operating agreement negotiated by Donnellon provided that upon the death of Alice Knabe, the Key Caribe property would be appraised, and Bryan Allf, as Trustee of the Cecil Allf Trust, would have a first right to purchase the membership interests of the Key Caribe property held by the Knabe Family Limited Partnership for one-half the appraised value of the Key Caribe property. The operating agreement also provided that there would be no compensation paid in managing Key Caribe and Cecil Allf would serve as Manager.

Cecil Allf and his attorney took the document to Alice Knabe on October 28, 2015 and had it signed before Donnellon could review the final version of the operating agreement with her.

On November 6, 2015, Donnellon met again with Alice Knabe and reviewed with her a letter he had prepared for her addressed to Fred Keith, Cecil Allf and Lisa Weiler advising that:

(1) Alice Knabe desired Donnellon to handle all matters pertaining to her estate planning and Key Caribe and that Donnellon be permitted the opportunity to review and approve all documents related to Key Caribe prior to signature,

(2) Cecil Allf would serve as her Power of Attorney and administer her son's estate in Florida because Cecil Allf qualified as a resident fiduciary, and,

(3) Fred Keith would advise and assist Cecil Allf in administering R. Craig Knabe's estate.

This letter was signed by Alice Knabe and delivered to attorney Fred Keith; counsel for Cecil Allf, putting Cecil Allf on notice once again that Alice Knabe was represented by independent counsel.

Cecil Allf then petitioned the Volusia County, Florida Court on November 9, 2015 to be appointed Administrator of R. Craig Knabe's estate. Cecil Allf was later appointed by the Volusia County, Florida Circuit Court, Probate Division, in Case Number 2015 12215 PRDL. An asset of R. Craig Knabe estate was his Twenty-Four and Twenty-Seven Hundredths percent (24.27%) interest in the Knabe Family Limited Partnership.

Thereafter, on November 23, 2015, Cecil Allf and his attorney prepared another revised and Amended Operating Agreement, which was not known to, reviewed or approved by Donnellon. This Amended Operating Agreement inserted a clause authorizing Cecil Allf to receive a fee for managing Key Caribe. The Amended Operating Agreement was signed by Alice Knabe, and then later sent to Donnellon in December 2015.

On or about this same time on November 4, 2015, counsel for Cecil Allf advised Donnellon that Cecil Allf was planning to have the Key Caribe property appraised, as Cecil Allf was interested in purchasing the Knabe Family Limited Partnership's interest

in Key Caribe. Counsel for Cecil Allf promised Donnellon to give him a copy of the appraisal for review with Alice Knabe.

At some point during December 2015, Cecil Allf received the appraisal of the Key Caribe property which indicated that the property had a market value of approximately Nine Million Dollars ($9,000,000). Neither Cecil Allf nor his attorney gave a copy of this appraisal to Attorney Donnellon or Alice Knabe.

In November and December 2015, Donnellon continued to prepare and review Alice Knabe's estate plan with her. The last Amendment and Restatement of her estate plan was reviewed and executed by Alice Knabe on November 13, 2015. A courtesy copy was presented to Cecil Allf by Donnellon through Cecil Allf's attorney, Fred Keith. As with the previous Amended Agreement of Trust shared with Cecil Allf, the principal beneficiaries of Alice Knabe's estate would be the six Non-Profit Organization Beneficiaries: the Christ Hospital Foundation, the University of Dayton, St. Bernard-Elmwood Place City School District Board of Education, Shelterhouse Volunteer Group, Inc., Ohio State School of Dentistry, and the Cincinnati State Technical and Community College Foundation.

In December of 2015, Donnellon worked with Alice Knabe on her estate plan. Among the steps taken at the close of 2015 were to properly designate beneficiaries of her Individual Retirement Accounts, to transfer individual assets to the Edna Alice Knabe Trust including her personal investment account and her partnership interests in the Knabe Family Limited Partnership, draw down the remaining principal from the Robert H. Knabe Fund A Trust into her personal Trust, and to draw down income and a five percent (5%) distribution of principal from the Fund B Trust. At the same time new

Trustees were appointed for the Robert H. Knabe Fund A Trust and Fund B Trust. The new Co-Trustees of the Fund A Trust and Fund Trust were Lisa Weiler and Cecil Allf. With the full knowledge of Lisa Weiler and Cecil Allf, these estate assets were aligned with Alice Knabe's existing plan to direct the substantial portion of her estate to her designated Non-Profit Organization Beneficiaries.

On February 2, 2016, Attorney Donnellon was advised by a third party that Cecil Allf was going to present sale documents to Alice Knabe to purchase the Knabe Family Limited Partnership's interest in Key Caribe for a price which the third party believed was well below market value.

A few hours later that same day, Cecil Allf, met with Alice Knabe. There were no attorneys present at the meeting. During this meeting, Cecil Allf presented certain documents to Alice Knabe, which he had requested another attorney prepare in order to create a private annuity which he would use to acquire all of Key Caribe. Alice Knabe was asked to immediately sign the documents with a promise that copies would be given to her later. Cecil Allf told Alice Knabe that the documents she was being requested to sign were for the purpose of allowing him to get her some money out of Key Caribe, which would be directly deposited to her bank account to take care of her bills. Alice Knabe allegedly signed the Private Annuity Agreement at that time.

On February 5, 2016, Donnellon met with Alice Knabe. During this meeting, Alice Knabe advised Donnellon that Cecil Allf had her sign some forms that Cecil Allf indicated to her were necessary to enable him to put some money into her bank account to pay nursing home expenses associated with her stay at the Maple Knoll Village. Alice Knabe said nothing about having signed the Private Annuity Agreement

or deed and said nothing about selling her interest in Key Caribe. Donnellon asked Alice Knabe if she had a copy of the documents so he could review the documents with her, but she did not have a copy.

On February 18, 2016, Cynthia Allf, Cecil Allf's daughter, texted Lisa Weiler telling her she was going to stop in to see Alice Knabe the next day to get wiring information to send Alice Knabe her part of the store rent from Key Caribe, as it was piling up. Instead, on February 19, 2016, Cecil Allf caused Alice Knabe to formally execute the Private Annuity Agreement and Deed relieving Alice Knabe of all interest in Key Caribe.

On February 25, 2016, less than one week later, Bryan Allf, acting through Cecil Allf, had Alice Knabe sign another operating agreement ("Operating Agreement") for Key Caribe which reaffirmed the sales provisions for the Knabe Family Limited Partnership in Key Caribe upon the death of Alice Knabe. On February 26, 2016, Alice Knabe allegedly signed an assignment conveying all interest in the Knabe Family Limited Partnership to Cecil Allf Trust.

Within the next few days, Cecil Allf completed the transfer of the Key Caribe property from the Knabe Family Limited Partnership to Key Caribe, LLC, which the Cecil Allf Trust now purportedly exclusively owned.

According to the Complaint, Cecil Allf had Alice Knabe sign:

(1)     a Private Annuity Agreement providing a monthly annuity of $20,000 per month that terminated upon the death of Alice Knabe, and

(2)     a deed and other legal documents necessary for Alice Knabe to transfer the interest of the Knabe Family Limited Partnership in the Key Caribe property to or for the benefit of Cecil Allf and/or the Cecil Allf Trust, and

(3)     an Assignment of Limited Liability Company Ownership Interest

purportedly transferring the Knabe Family Limited Partnership's 50% ownership interest in Key Caribe, LLC to the Cecil Allf Trust, and

(4)     a self-serving letter addressed to himself setting the value of the Knabe Family Limited Partnership interest at $1,429,750.

Just a few days later, Alice Knabe suffered another stroke on February 27, 2016. After Alice Knabe's stroke, Donnellon demanded a copy of the Key Caribe property appraisal from Cecil Allf's attorney. Donnellon was given copies of the executed documents which purported to strip Alice Knabe and her beneficiaries of any interest in the Key Caribe property. Upon learning of the deception, Donnellon demanded that the transaction be rescinded. Cecil Allf, through his attorney, refused.

Alice Knabe passed away on March 5, 2016.

Plaintiff Lisa Weiler brings the following claims against Cecil Allf, Bryan Allf as Trustee of the Allf Trust, and Key Caribe: declaratory judgment that Alice Knabe lacked authority to enter into the agreements by which the Knabe Family Limited Partnership transferred its membership interest in the Key Caribe property to the Cecil Allf Trust (Count One); breach of fiduciary duty (Count Two); fraud (Count Three); negligent misrepresentation (Count Four); conversion (Count Five); civil theft under Ohio Revised Code §2307.60 (Count Six); and breach of contract (Count Eight).

Plaintiff's remaining claims are for "Injunction" (Count Seven), "Constructive Trust" (Count Nine)," "Restitution" (Count Ten), and "Accounting" (Count Eleven).

In the Complaint, Plaintiff also named as defendants: The Christ Hospital Foundation; the University of Dayton; the Board of Education of the St. Bernard-Elmwood Place City School District; Shelterhouse Volunteer Group, Inc.; the Ohio State University College of Dentistry; the Cincinnati State Technical and Community College

Foundation; Cynthia L. Frost; Terry Knabe Bennett; Nancy E. Knabe; Karen S. Knabe; Timothy A. Knabe; and the State of Ohio. These defendants are beneficiaries of either the Edna Alice Knabe Trust or the Robert H. Knabe Trust. These defendants have brought cross-claims against Bryan Allf for intentional interference with expectancy of inheritance, and seek the remedies of restitution, constructive trust, and disgorgement. (Docs. 4, 6, 7).

Defendant Cecil Allf has moved for partial dismissal on the Claims and Cross-Claims brought against him for failing to state a claim upon which relief may be granted.

Defendant Bryan Allf, as Trustee of the Cecil Allf Trust, has moved to dismiss the Complaint and Cross-Claims against him based on lack of personal jurisdiction, or in the alternative, for failing to state a claim upon which relief may be granted.

Defendant Key Caribe has also moved to dismiss the Complaint and Cross-Claims based on lack of personal jurisdiction, or in the alternative, for failing to state a claim upon which relief may be granted.

## II. ANALYSIS

### A. Applicable motion to dismiss standards

### 1. Failure to state a claim under Rule 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal Rule of Civil Procedure 8 provides that all pleadings must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### 2. <u>Lack of personal jurisdiction under Rule 12(b)(2)</u>

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may seek dismissal if the court lacks personal jurisdiction over that defendant. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). When a court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, as this Court does here, the plaintiff "'need only make a prima facie showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Neogen*, 282 F.3d at 887) (internal citation omitted).

## B. Cecil Allf's Motion to Dismiss

Cecil Allf moves this Court to dismiss Counts One, Five, Six, Nine, Ten and Eleven of the Complaint and the entirety of the Cross-Claims filed against him for failing to state a claim upon which relief may be granted.

With regard to Plaintiff's claim for declaratory judgment (Count One), Cecil Allf argues that this Court cannot grant declaratory relief to remedy a past alleged wrongdoing because the purpose of declaratory relief is to guide parties in resolving a dispute as to future or contemplated conduct or rights that might affect that conduct.

The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The phrase "case of actual controversy" in the Act refers to the type of cases and controversies that are justiciable under Article III of the Constitution.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).  A declaratory judgment action will satisfies the case or controversy requirement if the dispute (i) is "definite and concrete," meaning that it touches on the legal relations of parties having adverse legal interests; (ii) is "real and substantial"; and (iii) admits of specific relief "through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* at 127 (internal quotation marks omitted).

Under Ohio law, "[a] declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations."  *Mid-Am. Fire & Cas. Co. v. Heasley,* 113 Ohio St. 3d 133, 136, 863 N.E.2d 142, 145 (Ohio

2007).  Although Ohio's declaratory judgment statutes are broad in scope, they are not without limitation.  *Id.*  "Most significantly, in keeping with the long-standing tradition that a court does not render advisory opinions, they allow the filing of a declaratory judgment only to decide 'an actual controversy, the resolution of which will confer certain rights or status upon the litigants.' "  *Id.* (quoting *Corron v. Corron*, 531 N.E.2d 708, 712 (Ohio 1988)).  Not every controversy is an actual one.  For a justiciable question to exist, "'[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events ... and the threat to his position must be actual and genuine and not merely possible or remote.'"  *Id.* (quoting *League for Pres. of Civil Rights & Internal Tranquility, Inc. v. Cincinnati*, 28 N.E.2d 660, 661 (Ohio Ct. App. 1940)).

Cecil Allf argues that declaratory judgment is not possible here because Plaintiff is seeking to correct an alleged past wrong.  Declaratory actions are generally reserved for situations where "some additional harm, not merely waiting for the natural plaintiff to sue, will befall the declaratory plaintiff in the meantime."  *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004).  In the tort context, "when a putative tortfeasor sues an injured party for a declaration of nonliability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff.'"  *Id.*  That tendency stems from the fact that the "'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing."  *Id.*  Here, Plaintiff is "not merely waiting for the natural plaintiff to sue," but is seeking a declaration regarding the ownership interests in the Key Caribe property through a determination as to whether Alice Knabe had authority to

transfer the Knabe Family Limited Partnership's ownership interest in the Key Caribe property. The Court concludes that based on the allegations in the Complaint, Plaintiff has sufficiently plead a claim for declaratory judgment. Therefore, Cecil Allf's Partial Motion to Dismiss is DENIED on this basis.

In Counts Five and Six, Plaintiff alleges that Cecil Allf is liable for conversion and civil theft in connection with the disputed transaction. Cecil Allf argues he did not receive property or benefit by virtue of the disputed transaction to which he was not a party, had no beneficial interest, and has never possessed the property which Plaintiff alleges was converted or stolen. Cecil Allf maintains that Georgia law applies to these claims because Key Caribe is a Georgia corporation, and therefore Georgia is the location of the alleged wrong.

Plaintiff argues that Ohio law controls because the "place of the wrong" is where the wrongful disposition of the asset occurred, not where the asset later came to rest. Plaintiff also argues that it is immaterial that Cecil Allf never personally took possession of Plaintiff's property after the wrongful act, or that he did not derive any personal benefit from the wrongful disposition of Plaintiff's property because such elements are unnecessary to state a claim for conversion or civil theft.

As this Court has observed, "Ohio has not adopted a test for determining the place of injury." *Sky Techs. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 296 (S.D. Ohio 2000). However, the Sixth Circuit has applied the Restatement (Second) of Conflict of Laws to a make that determination, explaining:

> A conversion does not occur when there is only a taking of property from its rightful owner. A conversion occurs when someone exercises dominion over the property without the owner's consent or authority. As the court stated in *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 619 (5th

Cir.1989), "[t]he conversion is complete when the defendant takes, detains, or disposes of the chattel." (quoting Prosser and Keeton on Torts 106 (5th ed. 1984)).

*Charash v. Oberlin Coll.*, 14 F.3d 291, 297 (6th Cir. 1994). Based on Plaintiff's allegations, Cecil Allf exercised dominion over the membership shares in Ohio when he had Alice Knabe sign documents which transferred the interest of the Knabe Family Limited Partnership in the Key Caribe property to the Cecil Allf Trust.

Ohio Revised Code § 2307.60 creates a civil cause of action for damages resulting from any criminal act. *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 401 (Ohio 2016). Under Ohio criminal law, theft is defined as follows:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception;
>
> (4) By threat;
>
> (5) By intimidation.

Ohio Rev. Code § 2913.02. The Court concludes that based on the allegations in the Complaint, Plaintiff has sufficiently plead a plausible claim for civil theft.

Under Ohio law, the elements of a conversion claim are: "1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996) (citing *Haul Transport of VA, Inc. v. Morgan*, No. CA 14859, 1995 WL 328995

(Ohio Ct. App. 1995)). The Court concludes that based on the allegations in the Complaint, Plaintiff has sufficiently plead a plausible claim for conversion.

Therefore, Cecil Allf's Partial Motion to Dismiss is DENIED as to Plaintiff's clams for conversion (Count Five) and civil theft under Ohio Revised Code §2307.60 (Count Six).

Cecil Allf argues that Counts Nine, Ten and Eleven—seeking a constructive trust, restitution or an accounting—are remedies, not causes of action. Plaintiff does not disagree, but explains that these remedies are requested or sufficiently implied in the Complaint. Plaintiff asks that this matter should proceed without the necessity of a specific and formal amendment to Plaintiff's Complaint. The Court agrees. *See Morgan v. Del Glob. Techs. Corp.*, No. 3-05-CV-123, 2007 WL 3227068, at *18, n.13 (S.D. Ohio Oct. 29, 2007) ("Since a constructive trust is a remedy, it will not be considered as one of Morgan's claims.") (citing *Ferguson v. Owens*, 459 N.E.2d 1293, 1295 (Ohio 1984)). Therefore, Cecil Allf's Partial Motion to Dismiss is GRANTED as to that Counts Nine, Ten and Eleven.

Cecil Allf also moves to dismiss the Cross-Claims for intentional interference with expectancy of inheritance, and the remedies of restitution, constructive trust, and disgorgement. Cecil Allf argues that the Cross-Claims seek damages for property that was owned at all times by a separate business entity, and in which they had no legal interest. Cecil Allf points out that there was never a change in the trust documents or Alice Knabe's will to support their claims for tortious interference. Cecil Allf argues that Cross-Claimants could only ever inherit or stand to inherit property owned by the Alice Knabe estate, the Alice Knabe Trust or the Robert Knabe Trust at the time that property

was to be distributed.

The elements of the intentional interference with expectancy of inheritance are: "(1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference." *Firestone v. Galbreath*, 67 Ohio St. 3d 87, 88, 616 N.E.2d 202, 203 (Ohio 1993). The Court finds that that based on the allegations in the Cross-Claims, Cross-Claimants have sufficiently plead a plausible claim for intentional interference with expectancy of inheritance. In her Complaint, Plaintiff alleges:

> The last Amendment and Restatement of [Alice Knabe's] estate plan was reviewed and executed by Alice Knabe on November 13, 2015 (Plaintif f's Exhibit B). A courtesy copy was presented to Cecil Allf by Attorney Donnellon through Cecil Allf's attorney, Fred Keith. As with the previous Amended Agreement of Trust shared with Cecil Alli, the principal beneficiaries of Alice Knabe's estate would be the six Non- Profit Organization Beneficiaries: The Christ Hospital Foundation, University of Dayton, St. Bernard-Elmwood Place City School District Board of Education, Shelterhouse Volunteer Group, Inc., Ohio State School of Dentistry, and Cincinnati State Foundation.
>
> . . .
>
> On January 13, 2016, Lisa Weiler, Cecil Alli, Alice Knabe, Attorney Donnellon and the financial advisors for Alice Knabe at UBS chosen by Cecil Alli met to review Alice Knabe' s estate plan and to review her assets and the update of her plan. During this meeting at Maple Knoll Village, everyone reviewed Alice Knabe's estate plan naming the Non-Profit Organization Beneficiaries and the anticipated value of the assets including an estimated value of Key Caribe that would pass to the beneficiaries on her death.

(Doc. 3, ¶¶ 79, 81). Therefore, Cecil Allf's Partial Motion to Dismiss is DENIED as to

the Cross-Claimants' claim for intentional interference with expectancy of inheritance.

## C. Bryan Allf's Motion to Dismiss

Defendant Bryan Allf, as Trustee of the Cecil Allf Trust, moves to dismiss the Complaint and Cross-Claims against him based on lack of personal jurisdiction, or in the alternative, for failing to state a claim upon which relief may be granted.

Bryan Allf is a resident of North Carolina, where he administers the Cecil Allf Trust as its sole trustee. (Bryan Allf Decl. ¶2-4). The Cecil Allf Trust is a Florida trust. (Doc. 34, Ex. B). The property in dispute is located in Florida. Key Caribe, LLC is a Florida limited liability company. The Knabe Family Limited Partnership, which owned an interest in the Key Caribe property before the disputed transaction, is a Georgia limited partnership. Bryan Allf argues that personal jurisdiction over him does not exist because neither of the parties to the transaction Plaintiff seeks to rescind were domiciled in Ohio at the time of Bryan Allf purchased the Key Caribe ownership interest in dispute. Bryan Allf also maintains that he signed the documents to effectuate the sale of the Knabe Family Limited Partnership's interest to the Cecil Allf Trust in North Carolina. Bryan Allf states that did not travel to Ohio in connection with the transaction and did not have direct discussions with Alice Knabe about the sale of the ownership interest.

"Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (citing *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 930 N.E.2d 784, 790 (2010); *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 543 (1994)).

Under Ohio's long-arm statute, a court "may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:"

(1) Transacting any business in this state,

. . .

(3) Causing tortious injury by an act or omission in this state,

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state,

. . .

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state;

Ohio Rev. Code § 2307.382(A).

The Sixth Circuit has a three-part test for determining whether due process permits the exercise of personal jurisdiction over a defendant:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Plaintiff and Cross-Claimants argue that Bryan Allf, as Trustee of the Cecil Allf Trust, acted directly and through the Trust's agents to perform acts in Ohio that gave rise to the claims set forth in the Complaint.

Plaintiff and Cross-Claimants maintain that Allf Trust transacted business in Ohio under Ohio Revised Code §2307.382(A)(1) because the Private Annuity Agreement, which purports to transfer Knabe Family Limited Partnership's ownership interest in Key Caribe to Bryan Allf as Trustee of the Allf Trust, is by its terms governed by Ohio law. Plaintiff and Cross-Claimant also explain that the Private Annuity Agreement created an ongoing obligation of Bryan Allf, as Trustee of the Allf Trust, to make payments to Alice Knabe in Ohio for the rest of her life.  However, as a point of clarification, Bryan Allf points out that the Private Annuity Agreement provides that payments were to the "Seller."  While Alice Knabe is listed as the "Seller" in the agreement, it is only in her capacity as "General Partner of the Knabe Family Limited Partnership."  In other words, the payments were made not made to Alice Knabe personally, but were made to Alice Knabe in her capacity as General Partner of the Knabe Family Limited Partnership.

The Ohio Supreme Court has interpreted "transacting" broadly:

> "Transact," as defined by Black's Law Dictionary (5 Ed.1979) 1341, " * * * means to prosecute negotiations; to carry on business; to have dealings * * *."  The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion * * *.

*Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75, 559 N.E.2d 477 (1990) (emphasis and omissions in original).   In determining what constitutes "transacting business," courts typically consider two factors: (1) whether the defendant initiated the "business dealing," and (2) whether the parties conducted their negotiations

in Ohio or with terms affecting Ohio. *Thomas v. Dykstra*, 309 F. Supp. 3d 480, 484 (N.D. Ohio 2018) (citing *Shaker Constr. Grp., LLC v. Schilling*, 2008 WL 4346777, at *3 (S.D. Ohio 2008)). In addition, the plaintiff must demonstrate there is a "substantial connection" between the defendant and the forum state. *Id.*

Bryan Allf did not personally transact business on behalf of the Cecil Allf Trust. Instead, Plaintiff's and the Cross-Claimant's argument relies on the premise that the Cecil Allf Trust was transacting business in Ohio because Cecil Allf was acting as agent on behalf of the Cecil Allf Trust.

"Under Ohio law, agency is a fiduciary relationship which results from (1) manifestation of consent by one person to another that the other; (2) shall act on his behalf; and (3) subject to his control; and (4) consent by the other so to act." *Moro Aircraft Leasing, Inc. v. Keith*, 789 F. Supp. 2d 841, 846 (N.D. Ohio 2011) (citing *Berge v. Columbus Cmty. Cable Access*, 136 Ohio App.3d 281, 301, 736 N.E.2d 517 (1999) (citing Restatement (Second) of Agency § 1 (1958)). There are no allegations in the Complaint or the Cross-Claims which would support a finding that Cecil Allf was acting as an agent on behalf of Bryan Allf or the Cecil Allf Trust. While there is a familial relationship between Bryan Allf and Cecil Allf, there are no allegations supporting an agency relationship under Ohio law. Another Ohio federal court examined a similar relationship between a husband and wife and determined that an agency relationship did not exist under Ohio law. *Thomas v. Dykstra*, 309 F. Supp. 3d 480, 485 (N.D. Ohio 2018). The court reached this conclusion after examining two cases interpreting Ohio agency law in the context of personal jurisdiction: *AgriSales Dynamix, LLC v. RECON Technologies*, LLC, 2012 WL 13027094 (W.D. Mich. 2012), and *Stolle Machinery Co. v.*

*RAM Precision Industri*es, 2011 WL 6293323 (S.D. Ohio 2011).  The court explained:

> Although these cases support the general proposition that an agent's contacts with a forum may be imputed to the principal, they are easily distinguishable from this case.  In *AgriSales Dynamix*, the court imputed an individual's contacts to a company with which he had a formal consulting relationship.  *AgriSales Dynamix*, 2012 WL 13027094, at *3–4. The court concluded that because the company had contracted with the individual to "derive benefits from his ongoing Michigan contacts," it could not "disclaim those same contacts" to limit personal jurisdiction.  *Id.* at *4. *Stolle Machinery* involved a misappropriation of trade secrets claim.  The court found an agency relationship existed between a company and its CEO because the CEO allegedly stole the trade secrets at issue and then used them to establish the company.  *Stolle Mach.*, 2011 WL 6293323, at *3–4, *7–8.  The company subsequently ratified its CEO's conduct by "knowingly using those trade secrets ... for its own financial gain."  *Id.* at *8. Both *AgriSales Dynamix* and *Stolle Machinery* involved developed business relationships and companies that ratified the other party's contacts by intentionally misusing the information gleaned from the contacts for their own benefit.  Neither of these factors is present in this case.

309 F. Supp. 3d at 485.  Therefore, the court concluded that the husband did not create an agency relationship with his wife by merely agreeing that his wife's parents could move in with their family.  *Id.*  Similarly, Plaintiff has not alleged that there was a formal agreement or understanding that Cecil Allf would act an agent on behalf of Bryan Allf or the Cecil Allf Trust.  Therefore, there was no agency relationship between Cecil Allf and Bryan Allf.

Moreover, the only connection to Ohio is the payments to be made to Alice Knabe, who happened to be living in Ohio at the time she signed the Private Annuity Agreement.  Such an arrangement does not satisfy the "purposeful availment" requirement under the federal due process analysis.  *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-23 (6th Cir. 2000) ("[I]n *International Technologies Consultants v. Euroglas*, 107 F.3d 386, 395 (6th Cir. 1997), we found it 'purely fortuitous' that the

foreign defendant-seller had any contact with Michigan. The defendant was not attempting to 'exploit any market for its products' in the state of Michigan, but rather had contact with the state only because the plaintiff chose to reside there."). Therefore, this Court lacks jurisdiction personal jurisdiction over Bryan Allf under both the under Section 2307.382(A)(1) of the Ohio long-arm statute and the Due Process Clause.

Next, Plaintiff and Cross-Claimants argue that this Court has personal jurisdiction over Bryan Allf under Sections 2307.382(A)(4) and (7) of Ohio's long-arm statute. The Complaint and the Cross-Claims allege that Cecil Allf's conduct was tortious and constituted theft. Plaintiffs and Cross-Claimants argue that this permits the Court to exercise personal jurisdiction. However, this argument rests on the premise that Cecil Allf acted as agent for the Cecil Allf Trust. Because the Court has determined that there are no allegations to support the conclusion that Cecil Allf was acting as an agent for Cecil Allf Trust, this Court lacks personal jurisdiction over Bryan Allf under Sections 2307.382(A)(4) and (7) of Ohio's long-arm statute.

Finally, Plaintiff and Cross-Claimants explain the Cecil Allf Trust has owned various parcels of real estate in Ohio; and the Cecil Allf Trust continues to own the sole membership interest in Allf Family, LLC, an Ohio limited liability company, which owns commercial real estate in Ohio. Plaintiff and Cross-Claimants maintain that this Court has personal jurisdiction over Bryan Allf under Sections 2307.382(A)(1) and (8) based on this ownership. However, Ohio's long-arm statute provides that "[w]hen jurisdiction over a person is based solely on this section, only a cause of action arising from acts enumerated in this section may be asserted against him." Ohio Rev. Code § 2307.382(C). The claims in the Complaint and the Cross-Claims do not arise from the

Cecil Allf Trust's ownership of property in Ohio.  Therefore, despite this ownership of property in Ohio, the Court does lacks personal jurisdiction over Bryan Allf under Sections 2307.382(A)(1) and (8) of Ohio's long-arm statute.

Because this Court does not have personal jurisdiction over Bryan Allf, as Trustee for the Allf Family Trust, Defendant Bryan E. Allf's Motion to Dismiss is GRANTED.  This dismissal is without prejudice.  *Accord Intera Corp. v. Henderson*, 428 F.3d 605, 620–21 (6th Cir. 2005).

### D.  <u>Key Caribe's Motion to Dismiss</u>

Defendant Key Caribe has also moved to dismiss the Complaint and Cross-Claims based on lack of personal jurisdiction or, in the alternative, for failing to state a claim upon which relief may be granted.

Key Caribe argues that this Court lacks personal jurisdiction over it.  Plaintiff and Cross-Claimants respond that this Court has personal jurisdiction over Key Caribe under Sections 2307.382(A)(1), (3), (4), (6) and (7) of Ohio's long-arm statute.

Key Caribe, LLC was formed on January 19, 2016.  (Doc. 3, Ex. I, PAGEID# 370).  According to the Operating Agreement, Cecil Allf is Key Caribe's Manager.  (Doc. 3, Ex. I, PAGEID # 372).  As Manager, Cecil Allf has "exclusive power and authority to manage and control all Company business."  (Doc. 3, Ex. I, PAGEID# 372).  Plaintiff alleges that Cecil Allf conducted business, caused tortious injury and committed civil theft in Ohio on behalf of, and for the benefit of, Key Caribe.  According to the Complaint, Cecil Allf came to Ohio on several occasions and met with Alice Knabe so that he could force Alice Knabe, an Ohio resident, to execute Key Caribe's Operating Agreement.  (Doc. 3, ¶¶ 58-59, ¶ 76).  Plaintiff alleges that on multiple days in February

of 2016, Cecil Allf met with Alice Knabe in Ohio to have her sign documents, including the Operating Agreement, which purportedly transferring the Knabe Family Limited Partnership's ownership interest in the Key Caribe property into Key Caribe, LLC. (Doc. 3, ¶¶ 82, 92, 93). Cross-Claimants allege that Cecil Allf's actions in Ohio form the basis of their claims for intentional interference with expectancy of inheritance which it brings against Key Caribe.

The Court concludes that Plaintiff and the Cross-Claimants have set forth allegations which establish personal jurisdiction over Key Caribe under Sections 2307.382(A)(1), (3), (6) and (7) of Ohio's long-arm statute. The Complaint and the Cross-Claims allege that Cecil Allf was acting as an agent for Key Caribe and transacted business in Ohio when he travelled to Ohio to meet with Alice Knabe and have her sign documents. These documents included the Operating Agreement and documents which purportedly transferred the Knabe Family Limited Partnership's ownership interest in the Key Caribe property to Key Caribe, LLC. Also included in these documents was the Private Annuity Agreement, which provided that Alice Knabe would receive an annuity which would pay her $20,000 a month for the rest of her life. Plaintiff alleges that Key Caribe has breached the Operating Agreement. Plaintiff and Cross-Claimants allege that by having Alice Knabe sign the documents which transferred of the Knabe Family Limited Partnership's ownership interest in the Key Caribe property to Key Caribe, LLC, Cecil Allf committed civil theft in Ohio which caused tortious injury to them. Plaintiff also brings a claim of conversion based on the acts of Cecil Allf. This same tortious injury forms the basis of the Cross-Claimants' claim for interference with the expected inheritance of the Cross-Claimants. Plaintiff and Cross-

Claimants have alleged that Cecil Allf might reasonably have expected that the Cross-Claimants would be tortuously injured because Allf had knowledge of Alice Knabe's estate plan. Therefore, Key Caribe acted through its agent to perform acts in Ohio that gave rise to the claims set forth in the Complaint.

The Court also concludes that the exercise of personal jurisdiction over Key Caribe, LLC is consistent with Due Process. First, Key Caribe, through its agent, Cecil Allf, purposefully availed itself to this forum. The "transacting any business" in Ohio's long-arm statute is coextensive with the Due Process clause. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006). In addition, Plaintiff alleges that Cecil Allf committed civil theft in Ohio in order to transfer the Key Caribe property from the Knabe Family Limited Partnership to Key Caribe, LLC.

Second, Plaintiff's and Cross-Claimant's claims against Key Caribe arise from Cecil Allf's activities in Ohio. The Operating Agreement for Key Caribe and documents purporting to transfer the ownership interest from the Knabe Family Limited Partnership to Key Caribe were negotiated, drafted and signed in Ohio. Plaintiff and the Cross-Claimants claim that these documents were a result of the civil theft committed by Cecil Allf in Ohio. Plaintiff and the Cross-Claimants also claim that Key Caribe breached the Operating Agreement by failing to make certain payments to Alice Knabe in Ohio.

"When the first two prongs of our personal jurisdiction test are met, there is an inference of reasonableness and 'only the unusual case will not meet this third criteria.'" *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 903-904 (6th Cir. 2017) (quoting *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007)). Courts look to the following factors in making a reasonableness determination: "(1) the

burden on the defendant; (2) the forum state's interest; and (3) the plaintiffs' interest in obtaining relief." *Id.* (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005)). Cecil Allf's multiple trips to Ohio to negotiate the terms of the Operating Agreement and other documents do not evince that exercising personal jurisdiction over Cecil Allf as agent for Key Caribe, LLC would not create a burden on Key Caribe. Therefore, the Court concludes that the acts of Cecil Allf on behalf of Key Caribe, LLC have a substantial enough connection with Ohio to satisfy Due Process.

Because this Court concludes that it has personal jurisdiction over Key Caribe, LLC, Key Caribe's Motion to Dismiss for lack of personal jurisdiction is DENIED.

Key Caribe also argues that Plaintiff has failed to state a claim upon which relief can be granted. Key Caribe argues that Plaintiff's only claim against Key Caribe is for breach of contract (Count Eight) for failure to make finance distributions under the terms of the Operating Agreement. Key Caribe asserts that Plaintiff cannot demonstrate that she is entitled to the relief she seeks from Key Caribe for breach of the Operating Agreement because the language of the Operating Agreement requires the Manager of Key Caribe to make distributions, not Key Caribe. However, as noted above, the Manager has "exclusive power and authority to manage and control all Company business." (Doc. 3, Ex. I, PAGEID# 372). There is nothing in the language of the Operating Agreement which would indicate that the Manager's responsibility to make distributions is divorced from the power and authority to manage and control all Company business. Therefore, the Court concludes that based on the allegations in the Complaint, Plaintiff has sufficiently plead a plausible claim for breach of contract.

Finally, Key Caribe argues that the Cross-Claimants have failed to state a claim for intentional interference with expectancy of inheritance. The Court has already determined that the Cross-Claimants have stated a claim for intentional interference with expectancy of inheritance against Cecil Allf. The Court has also concluded that Plaintiffs and Cross-Claimants have alleged that as Manager of Key Caribe, Cecil Allf acted as an agent of Key Caribe. Therefore, the Court concludes that based on the allegations in the Cross-Claims, Cross-Claimants have sufficiently plead a plausible claim for intentional interference with expectancy of inheritance.

Accordingly, Key Caribe, LLC, Key Caribe's Motion to Dismiss for failure to state a claim is DENIED.

## III.    CONCLUSION

Based on the foregoing, Defendant Bryan E. Allf's Motion to Dismiss (Doc. 29) is **GRANTED**; Defendant Cecil E. Allf's Partial Motion to Dismiss Complaint and Motion to Dismiss Cross-claims (Doc. 31) is **DENIED in PART** and **GRANTED in PART**; and Defendant Key Caribe, LLC's Motion to Dismiss (Doc. 32) is **DENIED**.

**IT IS SO ORDERED.**

_____*/s/ Michael R. Barrett*_____
JUDGE MICHAEL R. BARRETT